NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

06-1010

CLASSIFIED COSMETICS, INC.,

Plaintiff-Appellant,

v.

DEL LABORATORIES, INC.,

Defendant-Appellee.

_____

DECIDED:  December 12, 2006

_____

Before BRYSON, Circuit Judge, CLEVENGER, Senior Circuit Judge, and GAJARSA, Circuit Judge.

BRYSON, Circuit Judge.

In this patent action, Classified Cosmetics, Inc., claims that Del Laboratories, Inc., infringes U.S. Patent No. 6,589,541 ("the '541 patent"), which Classified owns.  Del responds that the '541 patent is invalid and not infringed, and it seeks a declaration to that effect.  The district court entered summary judgment for Del, holding the patent invalid because of inoperability.  We reverse and remand for further proceedings.

I

The '541 patent is directed to a method and system for spraying a cosmetic makeup composition onto skin.  Its claims recite a sprayable makeup composition comprising several components, including a synthetic wax component and a component

containing micronized titanium dioxide.  The claims require that those two components "exhibit a synergistic film-forming effect."

The district court defined "synergistic film-forming effect" to mean "a film-forming effect produced by the interaction of two components that is greater than the sum of the film-forming effect produced by each component in the absence of the other."  The district court permissibly looked to a dictionary to define the term "synergistic," because the specification did not provide a meaning and no other sources of meaning were offered.  The technical dictionary to which the district court was referred was Hawley's Condensed Chemical Dictionary, which defines "synergism" as requiring two chemical components to have a "more than additive" effect.  The dictionary elaborates that a synergistic effect occurs when the effect of two components "is greater than [that of] the equivalent volume or concentration of either component alone."  Under that definition, the combined effect of any two components must be compared against the effect of "the equivalent volume or concentration" of each component alone.

While we agree with the definition taken from the technical dictionary, we note that the district court's definition, which requires that the synergistic film-forming effect must be "greater than the sum of the film-forming effect produced by each component," could be misleading in the present context.  It could suggest, for example, that if each component is 40 percent effective in film-forming, the combination of components must be more than 80 percent effective in order for the combination to be considered synergistic.  That is plainly not required, however, because film-forming effectiveness expressed as a percentage does not scale with the quantity of the tested composition. All that is required under the proper definition (and under the district court's definition,

as we understand it) is that the effect of the combination be greater than that of an equivalent amount of either component by itself.

Classified argues that the specification of the '541 patent instructs that the phrase "synergistic film-forming effect" requires only that the two named components "act in concert" to produce the claimed film. Nothing in the specification requires us to adopt that definition, and it is plainly not sufficient for two materials to simply "act in concert," as Classified contends. In order to satisfy the requirement of synergism, the two components must achieve a result together that is greater than the result either achieves separately.

II

Del moved for summary judgment that the '541 patent is inoperable and therefore invalid for lack of utility and enablement. A claim is inoperable when it contains a limitation that is impossible to meet. Process Control Corp. v. HydReclaim Corp., 190 F.3d 1350, 1359 (Fed. Cir. 1999). Del argues that it is impossible for the claimed methods and systems to achieve the claimed synergistic film-forming effect. As evidence of its entitlement to summary judgment, Del submitted the report of its expert, Mr. John E. Wild. Classified objected that the report was inadmissible and that it would not support a finding that the '541 patent is inoperable. The district court rejected all of Classified's arguments and granted summary judgment of invalidity for inoperability based on the Wild report.

The principal flaw in the district court's ruling is that Del did not meet its burden of showing prima facie entitlement to summary judgment. As the party with the burden of proof on invalidity, Del was required to make a prima facie showing of invalidity before

the burden shifted to Classified to offer contrary evidence.  See Optivus Tech., Inc. v. Loma Linda Univ. Med. Ctr., No. 05-1518, slip op. at 18 (Fed. Cir. Nov. 16, 2006).  Del had to point to evidence that was sufficient, if uncontroverted, to entitle it to prevail as a matter of law.  Saab Cars USA, Inc. v. United States, 434 F.3d 1359, 1369 (Fed. Cir. 2006); see also 11 James Wm. Moore, Moore's Federal Practice § 56.13[1], at 56-135 (2006).  Mr. Wild's expert report on the tests conducted by the Hill Top company ("the Hill Top tests") purports to show that the claimed method and system failed to produce a synergistic film-forming effect when compositions containing both synthetic wax and micronized titanium dioxide were applied to test surfaces.  Those tests fall short of satisfying the applicable legal standard for two reasons.

First, the Hill Top tests measured film-forming ability in a way that could easily mask evidence of the operability of the claimed system and method.  To measure the degree to which the tested samples adhered to skin, Mr. Wild created five data ranges into which the Hill Top testers placed their observations of a sample's performance.  For example, if a tester observed that about half of a sprayed composition adhered to skin after a water rinse, the tester would record the level of adherence as falling into the 30 percent to 60 percent range, without further determining or recording the amount that actually adhered.  The choice of the data bands used in the test appears arbitrary, and Mr. Wild's report contains no explanation for the selection of those particular bands.  In addition, the bands are so broad as to mask differences in efficacy of up to 30 percent. More problematically, in one test the performances of the "control" samples—the samples that excluded one of the named ingredients—fell entirely within the upper band of adherence, which means that there was no possible way for the data to show that the

samples of the claimed composition exhibited improved performance.  In another test, "almost every one of" the tested samples registered in the upper band.  That evidence is insufficient to justify any fact-finder in concluding that the claimed composition exhibited no synergistic film-forming effect.  See E. I. du Pont de Nemours & Co. v. Berkley & Co., 620 F.2d 1247, 1260 (8th Cir. 1980) (Markey, C.J., sitting by designation) (holding that even if an accused infringer's invalidity tests were accurate, they did not establish inoperability as a matter of law because they did not disprove all utility, but rather only disproved some utility in contrived experimental conditions); see also Tenneco Chems., Inc. v. William T. Burnett & Co., 691 F.2d 658, 663–64 (4th Cir. 1983) (holding that "evidence not inconsistent with inoperability" is not clear and convincing evidence that overcomes the presumption of validity).

Second, the Hill Top tests are insufficient to establish inoperability as a matter of law because there is no evidence that the control samples against which Hill Top assessed inoperability behaved like the control samples required by the properly construed claims.  Ms. Kara Curry provided a declaration for Del establishing the contents of the canisters that Hill Top tested.  She stated that the relevant control samples comprised an embodiment of the composition recited in the claims with either the synthetic wax or the micronized titanium dioxide removed.  Ms. Curry stated that upon removing either of those components, "all other components in the composition were increased by an identical percentage . . . so that their relative concentrations remained unchanged."  The properly construed claims, however, require comparison of a mixture of the synthetic-wax and titanium-dioxide components against "the equivalent volume or concentration" of each component alone.  Thus, rather than increasing the

percentages of each of the other components to make up for the removed component, Del should have substituted enough of the remaining relevant component to create an "equivalent volume or concentration" of it in the control samples. Del's lack of evidence of how the behavior of the samples prepared by Ms. Curry approximates that of properly prepared control samples renders the tests ineffective to establish inoperability. We therefore reverse the summary judgment of invalidity based on inoperability and remand this case to the district court for further proceedings.

III

Del argues that we should affirm the summary judgment of invalidity on the alternative basis that the '541 patent is invalid because of anticipation, a theory on which the district court did not rule. Del relies on Mr. Wild's expert report to close the gap between a prior art reference and Classified's patent. For the reasons explained above, Mr. Wild's report does not establish the presence or absence of a synergistic film-forming effect in either the prior art composition or the claimed composition. Accordingly, we reject Del's anticipation argument based on the Wild report.