REYNA, Circuit Judge,
dissenting.
This case presents the question of at what point should the case management perspectives of a party trump an otherwise properly entered summary judgment? The majority takes the unusual course of vacating a summary judgment determination that is supported by the record evidence based on the premise that the district court failed to manage procedure and discovery in accordance with Baron Services, Inc.’s (“Baron”) case management expectations which the district court held to be unreasonable and obstructive. I find that the district court’s case management was not an abuse of discretion, and that the record evidence supports the entry of summary judgment. I respectfully dissent.
BACKGROUND
Baron accuses Media Weather Innovations, LLC (“MWI”) of infringing U.S. Patent No. 6,490,525 (“the '525 Patent”) by transmitting National Weather Service (“NWS”) warnings. The written description of the '525 Patent discloses a computer-based system that, after compiling meteorological data, may predict the path of a storm, '525 Patent col. 3 11. 39-41, use the data to generate storm profiles, id. at col. 4 11. 57-59, and perform “storm tracking functions.” '525 Patent col. 6 11. 24-27, 64-65. The end result, at least as envisioned in the preferred embodiment, is that the generated storm profiles are “distributed to the respective remote units by the distribution network” so that an end user receives “site-specific” and “highly relevant” weather information. '525 Patent col. 4,11. 59-65.
The asserted claims are drawn to “logic” configured to manipulate weather data and make determinations relating to weather events. The logic is also configured to transmit such weather-related determinations to a user in a geographic region experiencing the impending weather event. Claim 1 recites:
1. A system for providing weather event notifications, comprising:
memory for storing contact identifiers that identify a plurality of remote units; and
logic configured to make a determination as to whether one of said contact *916 identifiers identifies at least one of the said remote units that is located within a geographic region of an impending weather event, said logic further configured to transmit, if said logic determines in said determination that said one contact identifier identifies a remote unit located within said geographic region, a signal to the at least one remote unit based on said one contact identifier thereby enabling the at least one remote unit to notify a user within said geographic region of said impending weather event.
'525 Patent col. 10 11. 33-47 (emphases added). Based on the plain language of the representative claim, it cannot be infringed unless an accused system compiles data and determines, based on the user’s location, where to send the corresponding warning. The issue before the district court was whether MWI’s dissemination of unmanipulated NWS warnings, to a user at a self-designated location,[1] infringes the '525 Patent.
Summary Judgment
The dispositive summary judgment rationale—that MWI’s products do not infringe because they merely download publicly available NWS notifications and forward the notifications to subscribers— is based on Baron’s admissions and statements concerning what constitutes infringing activity. See J.A. 22; J.A. 1034. First in its written discovery responses, and later at oral argument, Baron defined the parameters of noninfringement: “[W]e concede just getting information from the National Weather Service and just passing it along without manipulation ... would not be an infringement of the patent.” J.A. 1034; see also J.A. 380. The district court noted that “Baron admits that information from the National Weather Service alone, including a ‘warning’, [sic] does not infringe the '525 Patent.” J.A. 23, n. 9 (quoting J.A. 380) (emphasis in original omitted).
In moving for summary judgment, MWI argued that its straightforward dissemination of weather information—without analysis or manipulation—could not satisfy the specific logic requirements of the asserted claims and fell squarely within Baron’s parameters of noninfringement. To support its position, MWI adduced evidence, including sworn declarations of corporate representatives, J.A. 138-39; J.A. 141-43; J.A. '491-92, copies of the alerts MWI disseminated to subscribers, J.A. 1058, and a proposal in the MWI provisional patent application describing preferred embodiments as delivering NWS warning without meteorological analysis or forecasting. See J.A. 626-27. The witness declarations provided a particularized comparison between operation of the accused products and the limitations in the claims. Mr. Michael Fannin, developer of the accused products, explained that the computer source code does not analyze meteorological data as claimed in the '525 Patent. J.A. 138. Similarly, Ms. Valerie Ritterbusch, President of MWI, provided two declarations clarifying that there is no analysis of data, id. at 142, and confirmed that the accused products transmit NWS *917 warnings without engaging in any sort of weather event prediction. Id. at 492.
Relying primarily on the witness declarations, the district court granted summary judgment because the MWI “does not use a geographical area, region, cell or grid to determine areas to be alerted.” J.A. 28. In particular, the district court cited to Baron’s admission in the written discovery response, and then evaluated the sworn statement of Ms. Ritterbusch stating that MWI “only transmits] National Weather Service warnings to members of the public who subscribe to MWI’s services.” J.A. 24 (quoting J.A. 491). After pointing out that Baron had not presented any evidence of infringement, by affidavit or otherwise, the district court concluded that MWI’s unrefuted showing established that it merely passes on alerts and such basic activities could not, as a matter of law, perform the numerous steps recited in the asserted claims. See id. at 28-29 (citing Ritterbusch declaration).
In light of this body of evidence, I would affirm the district court’s summary judgment ruling—a ruling that isolated and disposed of unsupported infringement claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (“One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.”); see also Minkin v. Gibbons, P.C., 680 F.3d 1341, 1351 (Fed.Cir.2012). Indeed, the purpose of summary judgment is to dispose of those issues for which there is no contention as a matter of law. Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
MWI discharged its burden when it presented evidence that it met Baron’s noninfringement description. Baron, having made a choice to define the bounds of noninfringing activities, did not rebut MWI’s summary judgment showing. Because Baron failed to point to specific ways in which accused products were capable of analysis and/or manipulation that met the claim limitations, the district court was correct to conclude that Baron did not have a credible basis to oppose the motion for summary judgment. Exigent Tech., Inc. v. Atrana Solutions, Inc., 442 F.3d 1301, 1308-09 (Fed.Cir.2006) (applying Eleventh Circuit law and holding that summary judgment is warranted when the movant has discharged its burden and there is an absence of evidence to support the nonmoving party’s case); Optivus Tech., Inc. v. Ion Beam Applications S.A., 469 F.3d 978, 990 (Fed.Cir.2006) (reaffirming the well-established summary judgment framework for shifting the burden of production).
DISCOVERY AND CLAIM C0NSTRUCTION
Taken as a whole, I believe that the majority takes a highly selective, one-sided perspective of the record.[2] First, the majority neither acknowledges nor discusses Baron’s voluntary narrowing of the noninfringement issue. Second, the majority ignores whether the summary judgment determination is supported by the record evidence. And, third, the majority fails to take into account Baron’s tactics which the district court described as obstinate and egregious. J.A. 30; J.A. 32.
*918 Our standard of review warrants deference to the district court’s characterization of the litigation dynamics,[3] especially where, as here, the district court recognized Baron’s efforts to undermine its established procedures. The district court noted Baron’s propensity to ignore court orders “in favor of its own proposed time lines and rules of procedure.” See J.A. 33, n. 16. The record bears out this observation, demonstrating a pattern of Baron comporting in a manner that suited its own convenience. For example, in response to a multitude of MWI inquiries, Baron resisted written discovery unless and until the district court adopted local patent rules and/or set a Markman hearing. See, e.g., J.A. 174; J.A. 362-85 (declining to exchange proposed claim constructions because Baron considered such a request “premature” prior to the court setting a Markman timetable). The district court expressed findings on these dilatory tactics and deficient discovery responses. The written decision reflects the district court’s frustration with the manner in which Baron prosecuted its case:
[T]he plaintiff relies on its request for a hearing and the timetable offered by it that was never adopted by the court as a reason it does not have to respond to discovery. The plaintiff did not address the fact that the requests for admission, as well as the remainder of the discovery propounded by the defendant were all in accordance with the Scheduling Order actually entered by this court.
J.A. 23, n. 9 (emphasis in original).
Baron’s efforts to dictate the trajectory of court proceedings should not have gained traction on appeal. While some districts and individual judges have elected to impose local patent rules, the district court was under no obligation to incorporate Baron’s requests into the docket control order. Nor was the district court obligated to hold a Markman hearing pri- or to summary judgment,[4] as demonstrated by Baron’s failure to cite authority that it was entitled to a hearing as a matter of right. This court, on previous occasions, has chastised district courts for conducting a trial without rigorous claim construction efforts. E.g., Allen Eng’g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1346 (Fed.Cir.2002); Graco, Inc. v. Binks Mfg. Co., 60 F.3d 785, 791 (Fed.Cir.1995). These decisions are procedurally distinct from the situation presented in this case. Our prior discussions of the need for claim interpretation have not demanded that claims be *919 construed in advance of summary judgment, and importantly, in Allen Engineering and Graco the parties did not diminish the need for the district court to construe the claims by voluntarily defining the parameters of noninfringement. Here, the district court had no need to examine the meaning of the claims in exacting detail because Baron’s explicit concessions shaped the infringement analysis by narrowing the scope of its claims when compared the claims with the accused products.
I believe that the district court acted reasonably by relying on Baron’s statements regarding the potential noninfringing operation of the accused products, and that such reliance negated the district court’s obligation to further define terms in the asserted claims. Compare with Majority Op. 914-15, n. 13 (critiquing the district court’s handling of claim construction in performing the infringement analysis). The majority’s reasoning encroaches upon a district court’s discretion to manage a case, and its critiques amount to appellate pronouncements on case management. The majority states that “[t]he importance of claim construction is quite evident here,” Majority Op. 914-15, n. 13, an assessment that indicates how the majority would have handled the case if wearing the district court’s robe. But that is not the inquiry on appeal. The issue on appeal is whether the record evidence supports the entry of summary judgment and whether the district court abused its discretion in its case management decisions.
The majority also pays significant attention to Baron’s claims regarding its need for MWI’s source code, yet Baron has no absolute entitlement to this discovery given its failure to demonstrate good cause as to why the source code was relevant to the alleged infringement. J.A. 164-65. I find that the source code issue is but one part of Baron’s litany of unsubstantiated discovery grievances that feint towards evidence that is not in the record to divert attention from the unrebutted evidence that is in the record. E.g., Majority Op. 912-14.
The majority likewise errs in proclaiming, without confronting the salient facts in the record, that the district court “refused” to permit depositions of Mr. Fannin and Ms. Ritterbusch. Majority Op. 913-14. The actual correspondence between the parties contradicts this assertion and shows that Baron could have taken Mr. Fannin and Ms. Ritterbusch’s depositions prior to the summary judgment hearing. J.A. 970-71. The parties had notice as to when the summary judgment motion would be heard and once the MWI witnesses were made available it behooved Baron to secure the testimony it needed to survive summary judgment, or at minimum to seek protective relief from the court. Instead, Baron affirmatively chose to not take depositions prior to the summary judgment hearing and to actually declare it would delay securing that testimony after the district court considered the summary judgment positions. This was a strategic choice for which it should bear the consequences. It is not our duty to repair a party’s self-inflicted wounds.
Conclusion
While I agree that parties generally should be permitted to develop the record, obtain claim construction, and engage in discovery prior to consideration of summary judgment, a party should not be permitted to escape summary judgment through deliberate trial strategies. Barfield v. Brierton, 883 F.2d 923, 932 (11th Cir.1989) (explaining that it is within a district court’s discretion to refuse to stay consideration of a motion for summary judgment “if the district court is dissatisfied with the nonmovant’s explanations as *920 to why he cannot rebut the movant’s motion for summary judgment”) (citing Wallace v. Brownell Pontiac-GMC Co., Inc., 703 F.2d 525, 527 (11th Cir.1983)). The record in this case supports the conclusion that the district court allowed discovery to run its course and after Baron made concessions regarding what constituted noninfringing activity, the district court evaluated the evidence of record and correctly found that Baron “failed to provide any evidence of specific actions, processes, or procedures of [MWT’s] product that follow the steps of plaintiffs patent.” J.A. 26. Eleventh Circuit case law confirms that the district court was correct to consider whether summary judgment was appropriate based on the record before it. Holloman v. Mail-Well Corp., 443 F.3d 832, 836 (11th Cir.2006) (appellate review of a district court’s grant or denial of summary judgment considers “only the evidence that was available to the district court at the time it considered the motion”) (internal citation omitted).
The majority adopted Baron’s procedural perspective and was dismissive of the district court’s role in setting the tone and schedule for case management and discovery disputes. In my view, the district court is endowed with broad discretion to decide the manner it will run a case. Fed. R. Crv. P. 16; Pac. Indem. Co. v. Broward County, 465 F.2d 99, 103 (11th Cir.1972) (noting that Rule 16 “gives the trial court broad discretion in conducting pretrial procedures in order to narrow the issues, reduce the field of fact controversy for resolution, and to simplify the mechanics of the offer and receipt of evidence”); accord Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir.1998) (“The Civil Rules endow judges with formidable case-management authority.... In exercising this power, trial judges enjoy great latitude.”) (internal citations omitted). Here, the record shows that the district court acted well within the bounds of reasonableness in denying Baron’s case management and discovery requests. Cf. Vivid Tech., Inc. v. Am. Sci. & Eng’g, Inc., 200 F.3d 795, 803-04 (Fed.Cir.1999) (affirming a district court’s decision to limit discovery as appropriate in each phase of the litigation). Because I find that the district court did not abuse its discretion and that the record supports summary judgment, I respectfully dissent.

. MWI distributes NWS warnings only to those users who opt-in through MWI's WeatherCall products. This distinction is important in understanding a core difference between Baron's commercial embodiment of its patent and the accused products. Whereas the Baron SafT-Net system analyzes where to send NWS warnings based on Internet digital addressing and whether a customer's phone number is inside or outside the area affected by the weather alert, see J.A. 556-57, the MWI accused products forward the NWS warnings based solely on geographic information the user provides in opting-in and requesting MWI's weather alerts. J.A. 491-92.

. See, e.g., Majority Op. 908 (emphasizing that the district court did not “set a timetable for Markman proceedings or for exchanging invalidity or infringement contentions”); Majority Op. 911-12 (using quotation marks to underscore the district court's perceived "duty”).

. "Questions of trial management are quintessentially the province of the district courts.” United States v. Smith, 452 F.3d 323, 332 (4th Cir.2006); see also Stuart v. Huff, 706 F.3d 345, 350 (4th Cir.2013) (honoring the trial court’s "superior vantage point” in "exercising judgment based on [the trial court’s] ‘on the scene' presence”) (internal citations omitted). These well settled precepts are consistent across all Circuits. See, e.g., Outside the Box Innovations, LLC v. Travel Caddy, Inc., 695 F.3d 1285, 1296 (Fed.Cir.2012) ("Deference is given to the district court’s discretion in trial management 'unless the ruling is manifestly erroneous.' ”) (quoting United States v. Frazier, 387 F.3d 1244, 1258 (11th Cir.2004) (en banc)); United States v. Criden, 648 F.2d 814, 817-18 (3d Cir.1981) (where the trial court has a "superior vantage point” from which to resolve the question, its decision “merits a high degree of insulation for appellate revision”).

. To the contrary, in the context of a given case, claim construction can, and does, occur solely based on the paper record. E.g., Interactive Gift Express, Inc. v. Compuserve Inc., 1998 WL 247485 at *1, n. 3 (S.D.N.Y. May 15, 1998) ("The Court notes at the outset that no Markman hearing is needed in this case because the Court does not require expert or other testimony to aid it in its claim construction.”), vacated on other grounds, 256 F.3d 1323 (Fed.Cir.2001); Revlon Consumer Prods. Corp. v. Estee Lauder Co., Inc., 2003 WL 21751833, at *14 (S.D.N.Y. July 30, 2003) (collecting district court cases).