NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE WILFRED WASHINGTON HOLNESS,**
*Appellant*

---

2014-1824

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board, in No. 11/204,754.

---

Decided May 20, 2015

---

WILFRED WASHINGTON HOLNESS, Bronx, NY, pro se.

NATHAN K. KELLEY, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee. Also represented by MEREDITH HOPE SCHOENFELD, COKE STEWART, THOMAS W. KRAUSE.

---

Before NEWMAN, REYNA, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellant Wilfred Holness appeals the Patent Trial and Appeal Board's ("PTAB") affirmance ("PTAB Decision"), J.A.5–18, of the United States Patent and Trademark Office's ("Director") rejection of claims 1–35

and 37–38 of patent application No. 11/204,754 ("the '754 Application") as anticipated and obvious primarily in light of U.S. Patent No. 4,765,613 ("Voris") and additional prior art references including: 1) U.S. Patent No, 7,160,042 ("Burrell"); 2) U.S. Patent No. 6,234,939 ("Moser"); 3) Pub. No. U.S. 2003/0211916 ("Capuano"); and 4) U.S. Patent No. 5,556,362 ("Whipps"). For the reasons set forth below, this court affirms.

BACKGROUND

A. The '754 Application

The '754 Application is titled "Apparatus for Isometric and Incremental Muscle Contractions" and is directed to resistance exercise machines such as leg extension machines found in many fitness centers. For example, with respect to leg extension machines, when a person is exercising on the machine, the exerciser will move the pad up to a certain point, and upon reaching that point, the pad will stop moving for a fixed period of time. The restriction of movement allows the user to work the muscles isometrically or by holding the weight in a fixed position.

According to the '754 Application, as the user applies external force "to a movable surface[1] linked to a resistance source,"[2] a sensing mechanism detects the

---

[1] According to the '754 Application:

A movable surface includes but is not limited to: the surface on [a] bar, a pad, a mat, a handle, a strap, a rope, a belt or such the like wherein an entity or user of an exercise apparatus can place a body part and exert a force and move the surface in which there is contact.

'754 Application at 27 ll. 12–14.

[2] The '754 Application defines a resistance source as a mechanism that "includes but is not limited to weight stack, free weights, a flexible rod, a leverage system or

distance the movable surface has traveled "in the direction of the applied force and opposite the direction of the resistance source force." '754 Application, at 3 ll. 19–23. Upon determining this position along the range of motion of the exercise being performed, the sensing mechanism dispatches an activation signal to a timer. The timer controls the duration of an activation signal sent to a halting effector mechanism which inhibits movement of the movable surface. The halting effector mechanism subsequently performs one of three actions: 1) "mechanically inhibit further movement of the surface in the direction of the external applied force," *id.* at 7 ll. 27–28; 2) in addition to performing action (1), simultaneously "signal[] for the cessation and immediate stasis of movement of the moveable surface for a given amount of time," *id.* at 8 ll. 1–2; or 3) "signal for the cessation and immediate stasis of movement of the moveable surface for a given amount of time." *Id.* at 8, ll. 2–3.

Independent claim 1 recites:

> An apparatus comprising:
>
> a mechanism which can inhibit for an amount of time,
> movement of a movable surface on the apparatus in a direction caused by an external force applied to the movable surface, while the apparatus permits uninhibited movement of the movable surface in the opposite direction to the external force, and . . .
> wherein the movable surface is linked to a resistance source which applies force which is diametric to the external applied force, and . . .
> the amount of time is determined by a timer.

---

such the like as to create an opposing resistance to the user's applied force." '754 Application, J.A. 280 at 27 ll. 8–9.

'754 Application, J.A. 280, ¶ 1.

## B.  The Prior Art

### 1.  Voris

Voris is directed to "a progressive resistance exercise device."  Voris, col. 1 ll. 6–7.  Voris seeks to minimize injuries during resistance training by providing an exercise device which "gradually applies resistance, in accordance with a predefined resistance gradient, to the movement of a lifting mechanism by an exerciser in at least a first positive resistance direction, while reducing the resistance to substantially zero when the lifting mechanism is moved in a negative resistance direction." *Id.* col. 3 ll. 6–12.  According to Voris, "[a] preferred time threshold limit is about two seconds." *Id.* col. 5 ll. 18–19. Therefore, when a user fails to move the bar in an upward or positive direction for more than two seconds, "the resistance mechanism [] functions to gradually reduce the supplied resistance opposing the movement of the bar [] to substantially zero." *Id.* col. 5 ll. 18–24.

The "resistance mechanism includes a brake, a torque converting transmission, a chain which is coupled to the transmission and attached to the bar, a position encoder and a microprocessor and display unit." *Id.* col 6. ll. 32–36 (patent figure numbers omitted).  According to Voris, "the position encoder is a suitable mechanism which can determine the relative position of the bar by directly reading the rotational position of the primay shaft of either the brake or the torque converter . . . and develops an output signal corresponding to this positional movement." *Id.* col. 5 ll. 61–67 (patent figure numbers omitted).

The "position encoder" is an optical encoder that "determines the relative position of the bar by directly reading the rotational position of the primary axle of either the brake or the torque converting transmission in

incremental units sufficient to allow for the gradual movement of the bar." *Id*. col. 7 ll. 30–36 (patent figure numbers omitted). The microprocessor "compares the position of the rotating shaft, by using the encoder output signal, to a resistance force gradient curve[3] to determine the amount of resistance [to be] applied to the rotating brake shaft at any given instance." *Id*. col. 8 ll. 3–8 (patent figure numbers omitted). If the exerciser fails to continue moving the bar forward for greater than a predetermined amount of time, the microprocessor causes the brake to reduce the resistance substantially to zero.

## 2. Burrell

Burrell discloses a method of controlling the movement of an object using sensors. The invention discloses the interchangeability of sensors and asserts any two binary sensors, including optical and snap action switch sensors, may be used to perform the same function.

## 3. Moser

Moser discloses an exercise bicycle that, in a particular mode, allows the exerciser to vary the resistance on one side without affecting the other side in order for the user to exercise both legs separately. Furthermore, an "optical encoder circuit [is] used to provide the optical data necessary . . . to perform measurment of the user's [p]ower, [d]istance and [s]peed values." Moser, col. 8 ll. 53–56.

---

[3] According to Voris, a "force curve is obtained by measuring the amount of force exerted by numerous individuals at different positions throughout the range of motion for a particular exercise in the first progressive resistance direction and averaging the amounts of force applied by these numerous individuals at each position." Voris, col. 8 ll. 33–38.

### 4. Capuano

Capuano allows users of exercise equipments such as free weights, weight stacks, and/or sport simulation devices to monitor and record personal and/or group exercise results. Bar codes are affixed to weights and during exercise, when a user is lifting the weights, the bar code tracks the movement of the weights. The bar code reader determines the duration the weight is in a position for each stage of lifting the weight by recording the weight's upward and downward movements. Capuano, [24], [53].

### 5. Whipps

Whipps discloses "[a] self-releasing pin for a weight training machine having a vertical stack of weights" that "automatically releases a selected number of weights from engagement." Whipps, Abstract, ll. 1–4 Furthermore, Whipps discloses that it was known in the prior art to use a solenoid-operated pin controller to retract a pin from a weight stack and vary the amount of resistance. "Upon receipt of a signal representative of momentary muscle failure of the user, solenoid operated pin controllers retract the pin supporting the stack of weights being lifted and insert a higher pin in the weight stack to automatically decrease the weights being lifted." Whipps, col. 2 ll. 17–21.

### C. Procedural Posture

The PTAB affirmed the United States patent Examiner's ("Examiner") rejection of claims 1–5, 25, 28–32, 35, 37 and 38 under 35 U.S.C. § 102(b) (2012), and claims 6–24, 26, 27, 33–34 under § 103(a). PTAB Decision at 3. Following this decision, Mr. Holness now appeals to this court, seeking reversal of the PTAB's affirmance of the Examiner's rejections. Pursuant to § 141 and 28 U.S.C. § 1295(a)(4)(A) (2012), this court has jurisdiction over this appeal.

## DISCUSSION

### A. Standard of Review

"Anticipation is a question of fact." *In re Rambus* Inc., 694 F.3d 42, 46 (Fed. Cir. 2012). This court upholds the PTAB's factual findings unless they are unsupported by substantial evidence. *In re Gartside*, 203 F.3d 1305, 1315 (Fed. Cir. 2000). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *In re Zurko*, 258 F.3d 1379, 1384 (Fed. Cir. 2001) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "If the evidence in [the] record will support several reasonable but contradictory conclusions, [this court] will not find the [PTAB's] decision unsupported by substantial evidence simply because the PTAB chose one conclusion over another plausible alternative." *In re Jolley*, 308 F.3d 1317, 1320 (Fed. Cir. 2002).

Whether an invention would have been obvious is a legal question based on underlying findings of fact. *Gartside*, 203 F.3d at 1316. "The presence . . . of a motivation to combine references in an obviousness determination is a pure question of fact." *Id.*

### B. Substantial Evidence Supports the PTAB's Finding of Anticipation

#### 1. Voris Discloses a Mechanism to Inhibit Movement

Mr. Holness contends Voris does not anticipate independent claims 1 or 37 or their dependent claims primarily because "[t]here is no inhibition of movement in the direction of the user's force (external force) brought about by the *Voris* device." Appellant's Br. 47. Additionally, Mr. Holness seeks to distinguish the '754 Application on the ground that upon inhibition of the bar in a positive direction, it allows the user to move in the direction opposite of the external force. *Id.*

The PTAB agreed with the Examiner's determination that "Voris discloses that the apparatus permits uninhibited movement of the movable surface in the opposite direction to the external force, while the mechanism inhibits movement of the movable surface in the direction caused by the external force." PTAB Decision at 6. Specifically, the PTAB affirmed the Examiner's finding, asserting that "if the user is too weak to overcome the applied resistance, the mechanism inhibits movement of the movable surface." *Id.* In addition to the Examiner's findings, the PTAB quotes a passage in Voris stating the invention "gradually applies resistance . . . to the movement of a lifting mechanism by an exerciser in at least a first positive resistance direction." *Id.* (quoting Voris, col. 3 ll. 5–10). Therefore, the invention expressly contemplates restricting the movement of the exerciser's positive external force. Moreover, contrary to Mr. Holness's contention, the invention recognizes the resistance present from a pre-existing resistance source (i.e., the weights on a movable surface) *in addition* to the gradual resistance applied by the mechanism itself.

With respect to Mr. Holness's claim that Voris, by substantially reducing the variable resistance to zero, fails to satisfy claims 1 and 37 of the proposed invention because it does not permit uninhibited movement of the movable surface in the opposite direction, we reject this argument. The distinction Mr. Holness seeks to establish is de minimis. Ostensibly, in a situation where the resistance has been substantially reduced to zero, an exerciser may choose to complete the lift by raising the bar to the highest point permitted by his/her full range of motion or *alternatively*, move the bar in a direction diametric to the external force being applied. That is, the exerciser may choose to lower the bar back down. Thus, an exerciser's discretion to move the bar in a position diametric to the initial positive external force being

applied, constitutes uninhibited movement of the movable surface in the opposite direction as disclosed by independent claim 1 of the '754 Application.  J.A. 280.

### 2.  Voris Discloses a Timer

Mr. Holness next argues that unlike claims 1, 4 and 37 and all other claims that depend therefrom, "*Voris* does not comprise a timer that inhibits movement of a moveable surface for an amount of time or a sensor linked to a timer." Appellant's Br. 51.  According to Mr. Holness, Voris does not: 1) "disclose a timer"; 2) "suggest in anyway how any alleged timer is to be implemented in the *Voris* device"; and 3) "*Voris* has no mechanism to inhibit movement of a movable surface for an 'amount of time,' there can be no timer control of any such mechanism in *Voris*." *Id.*

The PTAB concluded Voris inherently teaches a timer. PTAB Decision at 8.  The PTAB credited the Examiner's finding that:

> [A] timer must necessarily be used to determine the amount of time that the movement of the movable surface disclosed in Voris is inhibited, because Voris describes that the time period wherein the movable surface is inhibited begins when the user fails to continue moving the bar in the positive resistance direction and ends when a period of time greater than a given threshold time limit is reached.

*Id.* (citing Voris, col. 5 ll. 11–24).

Mr. Holness's contention that Voris does not disclose a timer, because it fails to employ the term "timer" is not persuasive. "[A] prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference." *Schering Corp. v. Geneva Pharm.*, 339 F.3d 1373, 1377 (Fed. Cir.

2003) (citing *Cont'l Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991)).

Indeed, Mr. Holness's assertion that Voris cannot disclose a timer because it has no mechanism to inhibit movement of a movable surface for a specific amount of time is unsupported by any evidence. In Voris, when a user fails to continue moving the bar in a positive direction for "[a] preferred time threshold limit [of] about two seconds," the system's resistance mechanism gradually reduces the supplied resistance opposing the movement of the bar effectively to zero. Voris, col. 5 ll. 18–24. Mr. Holness's argument fails to explain how, in the absence of a timer, Voris could detect when a user has failed to continue moving the bar in a positive direction for more than two seconds. In an effort to provide a response to that inquiry, Mr. Holness contends that to the extent there is a time delay in Voris, it is caused by the movement of its gears, as opposed to a separate "timer."

The PTAB's finding that the gears in Voris may serve as a timer is correct. The '754 Application recites a "timer," however, it does not place any restriction on the form or structure the timer may take. "[C]laims . . . are to be given their broadest reasonable interpretation consistent with the specification." *In re Am. Acad. of Sci. Tech Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004) (internal quotation marks and citation omitted). This court sustains the PTAB's rejections of independent claim 1 and of dependent claims 2–5, 25, 28, 29, 30–32, and 35.

### 3. Claims 37 and 38 of the '754 Application Are Anticipated by Voris

Mr. Holness contends the PTAB made a factual error when it "ruled that *Voris* anticipates claim 37 by disclosing the same components that perform the same functions." Appellant's Br. 54. Mr. Holness's contention is similar to his assertion regarding claim 1 of the '754 Application. Here, he reiterates his previous argument

that "*Voris* does not comprise a mechanism which can inhibit for an amount of time, movement of a movable surface on the apparatus in a direction caused by an external force applied to the movable surface with the limitation that the movable surface be linked to a resistance source." *Id*. With respect to claim 38 of the '754 Application, Mr. Holness again raises the previously-asserted contention that "Voris makes no mention of a timer of any kind as in Claim 38." *Id*.

Mr. Holness raises no new arguments concerning how the kit of claim 37 is not anticipated by Voris. The arguments raised by Mr. Holness have already been addressed and are rejected for the same reasons. We therefore affirm the PTAB's determination that Voris anticipates the claims 37 and 38.

### C. The PTAB's Obviousness Determination Is Correct

#### 1. Claims 6, 9, 12 and 18 Are Obvious in Light of Voris and Burrell

Claim 6 discloses various sensing mechanism embodiments including a snap action sensor switch with a roller and means to activate the switch.[4] J.A. 281, ¶ 6. The PTAB concluded Burrell teaches a variety of sensors that can be substituted for one another to effectively produce similar results. Mr. Holness argues the PTAB "committed both legal and factual error . . . regarding the substitution of a snap action switch for an [optical shaft encoder] in *Voris*." Appellant's Br. 57. Specifically, Mr. Holness contends that these two sensing mechanisms are wholly disparate. According to Mr. Holness, "[a] snap action switch is a mechanical switch and is not an optical

---

[4] Claims 9, 12, and 18 depend directly or indirectly from claim 6. Mr. Holness has not made any arguments concerning the limitations for a halting effector mechanism recited in claims 9, 12, and 18 of the '754 Application.

shaft encoder which reads or sense[s] very small incremental degrees of motion of the rotating shaft while mounted on the shaft." *Id*. at 58.

Voris teaches a position encoder used to "determine the relative position of the bar." Voris, col. 5 ll. 61–63. In a particular embodiment, the position encoder is an optical encoder that senses the relative position of the bar by reading the rotational position of the primary axle of the brake or the torque-converting mechanism. Voris, col. 7 ll. 30–40. Burrell discloses using sensors to control the movement of an object. Burrell, col. 1 ll. 44–47.

Furthermore, Burrell recognizes that in place of an optical function, binary sensors such as a snap action switch constitute an adequate substitute. Burrell, col. 3 l. 66–col. 4 l. 9. The asserted claim merely substitutes the optical shaft encoder in Voris for the mechanical snap action switch in Burrell. However, the United States Supreme Court has established that "[w]hen a patent claims a structure already known in the prior art that is altered by the mere substitution of one element for another known in the field, the combination must do more than yield a predictable result." *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 416 (2007). Here, Mr. Holness has not presented any evidence regarding why the substitution would yield any unpredictable results. Therefore, this court sustains the PTAB's obviousness rejection of claims 6, 9, 12 and 18.

### 2.  Claims 7, 10, 13 and 19 Are Obvious in Light of Voris and Moser

Claim 7 of the '754 Application incorporates the resistance exercise machine of claim 5 and requires the sensing mechanism comprise, inter alia, "an opto-

interrupter sensor and means to activate the sensor."[5] J.A. 281, ¶ 7.

Mr. Holness asserts that "[a]n opto interrupter sensor would not be possible to mount on a shaft and read incremental rotations." Appellant's Br. 60. Therefore, according to Mr. Holness, "[t]he combination of *Moser* would render Voris unsatisfactory for its intended purpose." *Id*.

The PTAB affirmed the Examiner's findings that it was obvious to substitute the encoder of Voris with the opto sensor of Moser which would render claims 7, 10, 13 and 19 of the '754 Application invalid under 35 U.S.C. § 103. PTAB Decision at 12.

Voris states that "[w]hile any suitable type of mechanism which can sense the rotational position of the shaft may be utilized with the present invention, it has been found particularly advantageous to utilize an optical encoder." Voris, col. 7 ll. 39–43 (patent figure numbers omitted). Furthermore, Moser discloses employing an opto[]interrupter sensor as part of an optical encoder circuit ("[O]pto interrupter sensors . . . are mounted to each drive sheave and each flywheel [] in order to provide the optical data to the 6811 microprocessor.") (patent figure numbers omitted). Moser, col. 8 ll. 58–61. Voris discloses an optical encoder to sense the position of the bar at a particular distance. Moreover, because Moser teaches that the optical encoder is capable of receiving information from an opto interrupter sensor, modification of the optical encoder of Voris to incorporate the opto interrupter sensor of Moser would have been obvious.

---

[5] Claims 10, 13, and 19 depend from claim 7.

### 3. Claims 8, 11, 14, and 20 Are Obvious in Light of Voris and Capuano

Claim 8 incorporates the resistance exercise machine of claim 5, where "the sensing mechanism comprises a bar code reader and a processor and means to activate [the] reader."[6] '754 Application, J.A. 281 ¶ 8.

Mr. Holness contends the PTAB erred in combining Capuano and Voris because unlike Capuano, Voris's sensor means "measures incremental shaft rotational movement." Appellant's Br. 61. Thus, combining Capuano and Voris "would render *Voris* unsatisfactory for its intended purpose and would change the principle [] operation of Voris." *Id*.

The PTAB affirmed the Examiner's finding that substitution of Capuano's bar code reader for the optical encoder of Voris would have been obvious because both sensing means "serve the same purpose and produce the same predictable result." PTAB Decision at 13 (internal quotation marks and citation omitted).

As noted by the PTAB, Capuano discloses a bar code system that indirectly recognizes a distance traveled by a movable surface. Furthermore, Capuano teaches a "[o]ptional progression bar-code readers record the weights passing upwards and downwards . . . [while a] peak-lift bar code reader ensure[s] [the] user has completed a lift." Capuano, col. 5 ¶ 5.

Here, Mr. Holness argues that an obviousness determination is improper because the bar code reader in Capuano is limited to recording the up and down motion of the movable surface and thus cannot be combined with Voris. Capuano teaches using the bar code system for recognizing a distance traveled by a movable surface and Voris discloses that another mechanism can serve as an

---

6   Claims 11, 14, and 20 depend from claim 8.

adequate substitute in measuring the position of the bar. Here, because Mr. Holness has not provided any compelling evidence that the bar code reader in Capuano is incapable of working for a rotational motion, we affirm the PTAB's determination. Thus, substantial evidence supports the PTAB's rejection of claims 8, 11, 14, and 20.

### 4. Claims 15 and 21 Are Obvious in Light of Voris, Burrell and Whipps

Claim 21 depends directly from claim 15. Claim 15 incorporates the resistance exercise machine of claim 6, where "the halting effector mechanism comprises a solenoid and a retractable pin." '754 Application at 30, ll. 15–16. Mr. Holness contends the PTAB committed legal and factual error in affirming the Examiner's determination "that it would be obvious to substitute a solenoid with a retractable pin of Whipps for the Voris brake means." Appellant's Br. 61. Specifically, Mr. Holness argues that in the '754 Application, the solenoid with a retractable pin is a binary device, capable of protruding or retracting. Accordingly, Mr. Holness asserts that "a solenoid with a retractable pin in the place of the *Voris* 'brake means' would not have the capacity to create a variable resistance or any resistance in the *Voris* device since *Voris* 'brake means varies resistance on a shaft.'" *Id.* at 62. Mr. Holness concludes that "it would be unsatisfactory to combine *Whipps* and *Voris* because *Whipps* teaches away from a solenoid and the use of a solenoid." *Id.*

The PTAB found that "Whipps discloses the use of solenoid operated pin controllers to adjust the resistance applied by an exercise machine based upon a signal representative of a user's momentary muscle failure." PTAB Decision at 14 (citing Whipps, col. 2 ll. 17–22).

"'A reference may be said to teach away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in

the reference, or would be led in a direction divergent from the path that was taken by the applicant.'" *In re Kahn*, 441 F.3d 977, 990 (Fed. Cir. 2006) (quoting *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994)). Mr. Holness has not provided any compelling grounds for his assertion that "*Whipps* teaches away from a solenoid." Appellant's Br. 62. His assertion that substituting a retractable pin in the place of a brake means in Voris teaches away from the use of a solenoid because the combination would fail to create a variable resistance in Voris misses the mark. As this court has established, movement of combined elements is within the technical capabilities of a skilled artisan in the art. *In re ICON Health & Fitness, Inc.*, 496 F.3d 1374, 1382 (Fed. Cir. 2007) ("[W]e do not ignore the modifications that one skilled in the art would make to a device borrowed from the prior art.") (citing *Optivus Tech., Inc. v. Ion Beam Applications, S.A.*, 469 F.3d 978, 989–90 (Fed. Cir. 2006)). Therefore, the appropriate test is not whether replacement of the solenoid pin controllers with a retractable pin for the brake means in Voris would have been appropriate, but whether it would have been obvious for a person of skill in the art to replace one halting effector mechanism with another. *See id.*

Here, as noted by the Examiner and affirmed by the PTAB, Voris disclosed its brake means as its halting effector mechanism and it would have been obvious for a skilled artisan to substitute one type of halting effector mechanism, such as a solenoid with a retractable pin, for another. Therefore, this court sustains the PTAB's obviousness rejections of claims 15 and 21.

### D. Mr. Holness Waived Any Right to Claim a New Ground of Rejection

Mr. Holness asserts the Examiner issued rejections based on U.S. Patent No. 5,195,746 ("Boyd")[7] in every

---

7   Boyd discloses an

office action, and in the Examiner's final answer, "claimed that *Boyd* was a 'typographical error'[8] and then issued a new ground of rejection, not in prior prosecution, based on *Burrell*, which the [PTAB] affirmed." Appellant's Br. 65

Mr. Holness asserts that because "[n]o notice of this ground of rejection was given [to him] during prosecution," it violates his right to due process. *Id.* Consequently, he claims the PTAB's affirmance of the Examiner's new ground of rejection constitutes "a violation of [his] due process rights." *Id.* at 64.

The Director argues Mr. Holness has waived his right to assert there was a new ground of rejection. According to the Director, "[a]n Examiner is permitted to include a new ground of rejection in the Examiner's Answer." Appellee's Br. 28 (citing 37 C.F.R. § 41.39). Upon issuing the rejection, the Director argues that the burden then shifts to the applicant to: "(1) request that prosecution be reopened before the primary examiner by filing a reply under 37 C.F.R. § 1.111; or (2) request that the appeal be maintained by filing a reply brief as set forth in 37 C.F.R. § 41.41." *Id.* at 28–29. The Director claims that Mr. Holness did not exercise either of these options.

---

[a]pparatus for controlling the movement of an electronic image on a video display [which] includes a base member, a seat for an operator, a support assembly for mounting the seat on the base member in facing relation to the video display, such that the seat can be tilted relative to the base member.

Boyd, Abstract, ll. 1–6.

8 The PTAB credited the Examiner's determination that it made a typographical error and that "Boyd had not been relied upon for rejecting claims 15 and 21." PTAB Decision at 14.

In this case, the PTAB affirmed the Examiner's rejection of the '754 Application over Voris and in light of what Mr. Holness claims to be a new ground—Burrell. However, similar to the regulation related to an Examiner's decision to reject an application on what constitutes new grounds, § 41.50(b), a subset of the same provision, titled "New ground of rejection," allows an appellant to challenge the PTAB's decision to reject an application based on new grounds "within two months from the date of the decision." 37 C.F.R. § 41.50(b). The appellant must either: 1) request a reopening of prosecution; or 2) request rehearing. *Id.* § 41.50(b)(1)-(2). Here, as noted by the Director, Mr. Holness appealed the PTAB's decision to this court as opposed to requesting a rehearing of the PTAB's decision as stipulated by the regulation. Thus, even if we assumed the PTAB based its determination on a new ground of rejection, Mr. Holness cannot now assert that such grounds constitute a violation of his due process rights.

CONCLUSION

For the foregoing reasons, the PTAB's decision is

**AFFIRMED**

COSTS

Costs to Director.